UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID COOK,<br><br>    Plaintiff,<br><br>v.<br><br>RENTGROW, INC., and<br>BACKGROUNDCHECKS.COM,<br><br>    Defendants. | Case No. 1:18-cv-10030-DJC |

**DEFENDANT RENTGROW INC.'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, ALTERNATIVELY,
<u>TO STRIKE STATUTORY/PUNITIVE DAMAGES CLAIMS</u>**

# **TABLE OF CONTENTS**

          **Page**

I.     SUMMARY OF ARGUMENT ................................................................................................ 1

II.    SUMMARY OF ALLEGATIONS ......................................................................................... 4

III.   ARGUMENT ......................................................................................................................... 5

     A. The Entire First Amended Complaint Should Be Dismissed for Failure to State a Claim under Section 1681e(b) ............................................................................ 5

        1. Legal and Pleading Standards for a Motion to Dismiss Section 1681e(b) Claims ........................................................................................................................ 5

        2. Plaintiff's Claim Fails as a Matter of Law Because RentGrow Was Entitled to Rely on Information from BGC and Cannot Be Liable Merely Because It Allegedly Reported Information that Turned Out to Be Inaccurate ............................................................................................................ 6

        3. Plaintiff's Claim Fails as a Matter of Law Because Plaintiff Does Not (and Cannot) Plausibly Allege that RentGrow's Report Caused Him Injury. ....................................................................................................................... 9

     B. Alternatively, Plaintiff's Claims for Statutory and Punitive Damages Fail as a Matter of Law and Should Be Stricken from the FAC .................................. 11

        1. Legal and Pleading Standards for Motion to Strike .......................................... 11

        2. Because the FAC Fails as a Matter of Law to Allege "Willful" Violations, Plaintiff's Claims for Statutory and Punitive Damages Should Be Stricken ............................................................................................... 12

IV.   CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 [] (2009) ..................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 ..................................................................................................5, 6, 10

*Darrin v. Bank of Am., N.A.*,
   2014 U.S. Dist. LEXIS 66461 (E.D. Cal. May 13, 2014) .......................................7, 9

*Elsady v. Rapid Global Bus. Solutions, Inc.*,
   2010 U.S. Dist. LEXIS 17266 (E.D. Mich. Feb. 26, 2010) .........................................7

*Freckleton v. Target Corp.*,
   2015 U.S. Dist. LEXIS 81401 (D. Md. June 23, 2015) ..............................................6

*Frydman v. Experian Info. Solutions, Inc.*,
   2016 U.S. Dist. LEXIS 107139 (S.D.N.Y. Aug. 11, 2016) .........................................8

*Fryer v. A.S.A.P. Fire & Safety Corp.*,
   658 F.3d 85 (1st Cir. 2011) .......................................................................................12

*Goldberg v. Uber Techs., Inc.*,
   2015 U.S. Dist. LEXIS 44675 (D. Mass. Apr. 6, 2015) ............................................12

*Gray v. Experian Info. Solutions*,
   2001 U.S. Dist. LEXIS 5466 (D. Ariz. Mar. 21, 2001) .........................................7, 8

*Grigoryan v. Experian Info. Solutions, Inc.*,
   84 F. Supp. 3d 1044 (C.D. Cal. 2014) ........................................................................7

*Haley v. City of Boston*,
   677 F. Supp. 2d 379, 385 (D. Mass. 2009) ...............................................................11

*Henson v. CSC Credit Servs.*,
   29 F.3d 280 (7th Cir. 1994) ................................................................................ passim

*Hutchinson v. Carco Grp., Inc.*,
   2015 U.S. Dist. LEXIS 130858 (E.D. Pa. Sept. 29, 2015) ..................................12, 13

*Lane v. Fein, Such & Crane, LLP*,
   767 F. Supp. 2d 382 (E.D.N.Y. 2011) ......................................................................10

*Miller v. Caliber Home Loans, Inc.*,
 2018 U.S. Dist. LEXIS 25504 (W.D. Ky. Feb. 15, 2018) ...................................................... 10

*Miller v. Credit Bur., Inc.*,
 1986 U.S. Dist. LEXIS 16047 (S.D. Miss. Dec. 23, 1986) ........................................................ 7

*Ocasio-Hernandez v. Fortuño-Burset*,
 640 F.3d 1 (1st Cir. 2011) .......................................................................................................... 5

*Ogbon v. Ben. Credit Servs., Inc.*,
 2013 U.S. Dist. LEXIS 50816 (S.D.N.Y. Apr. 8, 2013) ............................................................ 7

*Richardson v. Fleet Bank*,
 190 F. Supp. 2d 81 (D. Mass. 2001) ................................................................................. passim

*Rivera v. DealerFunding, LLC*,
 178 F. Supp. 3d 272 (E.D. Pa. 2016) ....................................................................................... 11

*Rodriguez v. Equifax Info. Servs., LLC*,
 2015 U.S. Dist. LEXIS 93560 (E.D. Va. July 17, 2015) ........................................................... 8

*S.E.C. v. Tambone*,
 597 F.3d 436, 441-42 (1st Cir. 2010) ......................................................................................... 5

*Saenz v. Trans Union, LLC*,
 621 F. Supp. 2d 1074 (D. Or. 2007) .......................................................................................... 7

*Safeco Insurance Company of America v. Burr*,
 551 U.S. 47 (2007) ................................................................................................................... 12

*Santiago v. Santiago*,
 731 F. Supp. 2d 202 (D.P.R. 2010) .......................................................................................... 11

*Sarver v. Experian Info. Solutions*,
 390 F.3d 969 (7th Cir. 2004) .............................................................................................. passim

*Schatz v. Republican State Leadership Comm.*,
 669 F.3d 50 (1st Cir. 2012) ................................................................................................... 5, 10

*Seippel v. Jenkens & Gilchrist*,
 *P.C.,* 341 F. Supp. 2d 363, 383 (S.D.N.Y. 2004) .................................................................... 11

*Sion v. SunRun, Inc.*,
 2017 U.S. Dist. LEXIS 35730 (N.D. Cal. Mar. 13, 2017) ....................................................... 10

*Smith v. Auto Mashers, Inc.*,
 85 F. Supp. 2d 638 (W.D. Va. 2000) ......................................................................................... 7

*Van Straaten v. Shell Oil Prods. Co.*,
   678 F.3d 486 (7th Cir. 2012) ..................................................................................................12

*Vidoni v. Acadia Corp.*,
   2012 U.S. Dist. LEXIS 59967 (D. Me. Apr. 27, 2012) ............................................................12

*Wenning v. On-Site Manager, Inc.*,
   2016 U.S. Dist. LEXIS 81126 (S.D.N.Y. June 22, 2016)..........................................................8

*Wright v. Experian Info. Solutions, Inc.*,
   805 F.3d 1232 (10th Cir. 2015) .................................................................................................8

**Federal Statutes**

15 U.S.C. § 1681a ............................................................................................................................1

15 U.S.C. § 1681d ............................................................................................................................3

15 U.S.C. § 1681e ...................................................................................................................passim

15 U.S.C. § 1681i .........................................................................................................................1, 8

15 U.S.C. § 1681n ...................................................................................................................passim

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................................5, 13

Fed. R. Civ. P. 12(f) ................................................................................................................11, 13

**Regulations**

16 C.F.R. pt. 600, App. (effective May 4, 1990) ............................................................................7

76 FR 44462-01 (July 26, 2011) .....................................................................................................7

## I. SUMMARY OF ARGUMENT

If ever there were an example of the Fair Credit Reporting Act working precisely as it was designed to work, it is this case *as alleged* by Plaintiff. Defendant RentGrow, Inc. ("RentGrow") is a Waltham-based "reseller"[1] consumer reporting agency ("CRA") that provides tenant screening reports to property owners and managers to help them make informed decisions about applicants to their properties. Plaintiff David Cook ("Plaintiff") seeks to hold RentGrow liable under the Fair Credit Reporting Act ("FCRA") for an alleged inaccuracy in a tenant screening report that defendant RentGrow provided to its client, Canterbury Apartments in Myrtle Beach, South Carolina ("Canterbury"), in connection with Plaintiff's application for rental housing. That report contained background information about Plaintiff that RentGrow received from several furnishing CRAs, including Backgroundchecks.com ("BGC"), a well-known national vendor of criminal background information.[2]

The information that BGC provided to RentGrow indicated that Plaintiff had a "pending" criminal charge in South Carolina. Plaintiff alleges that this criminal charge had been dismissed but that because RentGrow reported it, Canterbury denied his rental application. Plaintiff further alleges that on January 4, 2018, Plaintiff disputed the information with RentGrow. In full compliance with its obligations under the FCRA, 15 U.S.C. § 1681i(f), RentGrow immediately forwarded Plaintiff's dispute to BGC. RentGrow advised Plaintiff that the dispute process could take up to thirty (30) days, the maximum time permitted by Section 1681i.

---

[1] RentGrow is a "reseller" under the FCRA, 15 USC § 1681a(u). A "reseller" is defined as a consumer reporting agency that "(1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities;" and "(2) does not maintain a database of the assembled or merged information from which new consumer reports are produced." *Id.*

[2] Backgroundchecks.com ("BGC") is a d/b/a of e-backgroundchecks.com, Inc., a CRA that provides, *inter alia*, consumers' criminal background information to purchasers, including other CRAs such as RentGrow.

Despite RentGrow doing everything it was required to do under the FCRA with respect to Plaintiff's dispute, Plaintiff nevertheless filed his initial Complaint on January 6, 2018—a mere two days after he initiated the dispute process. On January 9, BGC notified RentGrow that BGC's reinvestigation had been completed and that the pending charge had been removed from Plaintiff's record. Based on the results of BGC's reinvestigation, RentGrow updated Plaintiff's tenant screening report to remove the criminal charge, reapplied Canterbury's eligibility criteria to the updated report, and sent both the updated report and an updated result to Canterbury. **According to Plaintiff's counsel, upon receiving the updated report and updated result, Canterbury approved Plaintiff's application, and he currently lives in the very apartment to which he originally applied.**

The entire dispute process took five of the 30 days permitted under the FCRA. In his First Amended Complaint ("FAC"), which Plaintiff filed with RentGrow's consent on March 2, 2018, Plaintiff does not allege that he lost the opportunity to live at Canterbury, that his opportunity to live at Canterbury was delayed, or that he suffered any other economic loss or damage. Rather, Plaintiff asserts, in conclusory fashion and without alleging any factual support, only that he suffered "harm to reputation and emotional distress, including anxiety, frustration, embarrassment and humiliation" (FAC ¶ 21) during the five days that it took for RentGrow to process his dispute and communicate the updated report to Canterbury. Despite RentGrow's counsel's significant effort during Local Rule 7.1(a)(2) discussions to explain the deficiencies in Plaintiff's case and to promptly resolve this matter, Plaintiff continues to press his FCRA claim and to demand tens of thousands of dollars from RentGrow.

2

Plaintiff's claim[3] is based on the bare allegations that RentGrow failed to "follow any procedure to assure the accuracy of the consumer report,"[4] and "failed to take any steps to verify the accuracy of the information contained" therein.  Allowing Plaintiff's claim to proceed on this basis would require treating 15 U.S.C. § 1681e(b) as a strict-liability statute, which it is not.  As made clear by Plaintiff's own allegations, RentGrow not only followed the dispute procedures mandated by the FCRA, but it did so far more expeditiously than the FCRA requires.  Moreover, allowing Plaintiff's claim to proceed would require ignoring the overwhelming authority that permits RentGrow, as a reseller CRA, to rely on information it receives from reputable furnishing CRAs like BGC.  Indeed, there is no dispute that the criminal charge RentGrow reported belonged to Plaintiff.  Rather, the FAC advances the theory that RentGrow should have independently verified the underlying records substantiating the criminal charge information that RentGrow received from BGC.  But this theory is foreclosed as a matter of law.

RentGrow, as a reseller CRA, is entitled to rely on the information about Plaintiff's criminal history furnished to it by a reputable third-party CRA such as BGC.  Doing so cannot, as a matter of law, constitute a failure to comply with Section 1681e(b).  This has been black letter law in this District for more than 15 years.  As former Chief Judge Freedman readily acknowledged, a CRA like RentGrow is "initially entitled to rely on information contained in the reports" of sources it reasonably believes to be credible, "because it would be unduly

---

[3] Although the FAC includes a single reference to 15 U.S.C. § 1681d(d)(3) (see FAC ¶ 25), RentGrow assumes this reference was inadvertently retained from Plaintiff's original Complaint, which had incorrectly asserted a Section 1681d claim.  One of the reasons RentGrow consented to Plaintiff filing the FAC was to allow him to remove that claim and related allegations, since Section 1681d applies only to "*investigative* consumer reports," which the parties agree are not at issue here.  Accordingly, the instant motion addresses only Plaintiff's sole claim under Section 1681e(b).

[4] Section 1681e(b) requires a CRA to "follow *reasonable* procedures to assure maximum *possible* accuracy" of the information reported (emphasis added). Plaintiff's omission of the key words "reasonable" and "possible" is a telling indication that Plaintiff's claim is based on an outsized and incorrect view of what the FCRA requires of CRAs that necessarily rely on information from third party CRA furnishers.

burdensome and inefficient to require an agency to look beyond the face of every [background] report." *Richardson v. Fleet Bank*, 190 F. Supp. 2d 81, 85 (D. Mass. 2001) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994)); *see also, Sarver v. Experian Info. Solutions*, 390 F.3d 969, 972 (7th Cir. 2004) (holding that reliance on a reputable source is permitted unless CRA has "notice of prevalent unreliable information" from the source). Plaintiff has not advanced any factual allegations or legal theory to support an argument that it was unreasonable for RentGrow to rely on the information reported by BGC. Thus, the FAC fails as a matter of law and should be dismissed.

Even if *arguendo* Plaintiff's claim could survive dismissal, his requests for statutory and punitive damages separately fail as a matter of law. The FAC contains no factual allegations of "willful" misreporting by RentGrow to support claims for statutory and punitive damages under Section 1681n. Absent such allegations (which Plaintiff cannot plead here consistent with Rule 11), Plaintiff cannot state a claim for statutory or punitive damages. Accordingly, if the Court does not grant RentGrow's motion to dismiss, RentGrow respectfully requests that the Court nevertheless strike Plaintiff's improper requests for statutory and punitive damages.

## II.  SUMMARY OF ALLEGATIONS

Plaintiff's FAC alleges that Plaintiff applied to Canterbury for rental housing in January 2018. (FAC ¶ 6.) In connection with Plaintiff's rental application, Canterbury obtained a tenant screening report on him from RentGrow on or about January 3, 2018. (FAC ¶¶ 7, 8, 10.) This report included information obtained from BGC indicating that Plaintiff had a "pending" criminal charge in South Carolina. (FAC ¶¶ 9, 14.) However, the FAC alleges that the criminal charge had already been dismissed. (FAC ¶ 15.) It further alleges that RentGrow's reporting of the criminal charge caused Canterbury to deny Plaintiff's rental application. (FAC ¶¶ 11, 14.) The FAC alleges that RentGrow and BGC did not follow any procedure to assure accuracy and

4

failed to take steps to verify the information in Plaintiff's report.  (FAC ¶¶ 17, 20.)

The FAC alleges that Plaintiff contacted RentGrow on January 4, 2018, to dispute the information contained in the report, and was told that the dispute investigation would take up to thirty (30) days to complete, "at which time Plaintiff would not have a place to live because Plaintiff's current lease was about to expire."  (FAC ¶¶ 18-19.)  It further alleges, without any supporting facts, that Plaintiff suffered "actual damages in the form of harm to reputation and emotional distress, including anxiety, frustration, embarrassment and humiliation." (FAC ¶ 21.)

Finally, the FAC alleges that Defendants' conduct was "intentional, willful, reckless, and in grossly negligent disregard of federal law"—again without pleading any facts to support this claim.  (FAC ¶ 22.)

### III. ARGUMENT

#### A. The Entire First Amended Complaint Should Be Dismissed for Failure to State a Claim under Section 1681e(b)

##### 1. Legal and Pleading Standards for a Motion to Dismiss Section 1681e(b) Claims

In *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012), the First Circuit set forth the steps for "proper handling of a [Rule 12(b)(6)] motion to dismiss":

> Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements. [*Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)] (discussing, among other cases, *Ashcroft v. Iqbal*, 556 U.S. 662 [] (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 [] (2007)). Step two: take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief. *Id.* (again, discussing *Iqbal* and *Twombly*, among others); *see also S.E.C. v. Tambone*, 597 F.3d 436, 441-42 (1st Cir. 2010) (en banc). Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a "context-specific" job that compels [the Court] "to draw on" [its] "judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1949, 1950.

*Schatz*, 669 F.3d at 55-56 (certain internal citations omitted).  As stated in *Twombly*, "Factual

allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.

The FCRA requires CRAs to use "reasonable procedures to assure maximum possible accuracy" regarding the information contained in a consumer report. *Richardson*, 190 F. Supp. 2d at 85 (quoting 15 U.S.C. § 1681e(b)). "A claim of noncompliance with section 1681e(b) consists of four elements: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Id.* (internal quotes and citation omitted). Plaintiff's FAC fails to allege facts plausibly establishing the second, third, or fourth elements of a Section 1681e(b) claim. Accordingly, Plaintiff's claim fails as a matter of law.

   **2.** **Plaintiff's Claim Fails as a Matter of Law Because RentGrow Was Entitled to Rely on Information from BGC and Cannot Be Liable Merely Because It Allegedly Reported Information that Turned Out to Be Inaccurate.**

Plaintiff's claim under Section 1681e(b) fails because RentGrow was entitled to rely on, and resell, the information provided by BGC.  It is well established that a CRA, including a reseller such as RentGrow, is "initially entitled to rely on information contained in the reports" of sources it reasonably believes to be credible, "because it would be unduly burdensome and inefficient to require an agency to look beyond the face of every credit report." *Richardson*, 190 F. Supp. 2d at 85 (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994)).

For this reason, Plaintiff's allegation that RentGrow did not "verify" the accuracy of the criminal charge information it obtained from BGC (FAC ¶ 20) is irrelevant.  "[C]ourts have *routinely rejected* the argument[] that the Plaintiff makes here – that [RentGrow] should have conducted an independent investigation before reporting" information obtained from a reputable source such as BGC. *Freckleton v. Target Corp.*, 2015 U.S. Dist. LEXIS 81401, at *14-15 (D.

6

Md. June 23, 2015) (emphasis added). "Absent some prior indication that the information is inaccurate, it is reasonable and cost efficient to report information without independent verification." *Henson*, 29 F.3d at 285.

The FCRA does not require perfection. Rather, the rule that is dispositive of this case is well established: "If a consumer reporting agency accurately . . . communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate § 1681e(b) . . . simply by reporting an item of information that turns out to be inaccurate." *Grigoryan v. Experian Info. Solutions, Inc.*, 84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014) (original brackets omitted); *see also Richardson*, 190 F. Supp. 2d at 86 (citing *Henson*, 29 F.3d at 285). A CRA's obligations under Section 1681e(b) "concern the maintenance and operation of [its] own ***internal*** [procedures] rather than [the] investigation of the accuracy of information received from external sources." *Grigoryan*, 84 F. Supp. 3d at 1071 (internal quotes omitted). Numerous cases from a wide range of jurisdictions apply or acknowledge this rule,[5] and it is embodied in prior FTC administrative guidance.[6]

---

[5] *See, e.g.*, *Sarver*, 390 F.3d at 972-73; *Henson*, 29 F.3d at 285; *Alston*, 2016 U.S. Dist. LEXIS 117939, at *11-14; *Darrin v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 66461, *17-18 (E.D. Cal. May 13, 2014); *Ogbon v. Ben. Credit Servs., Inc.*, 2013 U.S. Dist. LEXIS 50816, at *20-24 (S.D.N.Y. Apr. 8, 2013); *Elsady v. Rapid Global Bus. Solutions, Inc.*, 2010 U.S. Dist. LEXIS 17266, at *13-14 (E.D. Mich. Feb. 26, 2010); *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1079-81 (D. Or. 2007); *Gray v. Experian Info. Solutions*, 2001 U.S. Dist. LEXIS 5466, at *24-25 (D. Ariz. Mar. 21, 2001); *Smith v. Auto Mashers, Inc.*, 85 F. Supp. 2d 638, 640-42 (W.D. Va. 2000); *Miller v. Credit Bur., Inc.*, 1986 U.S. Dist. LEXIS 16047, at *6-9 (S.D. Miss. Dec. 23, 1986).

[6] For more than 20 years, non-binding FTC commentary stated that Section 1681e(b) "does not require error free consumer reports. If a consumer reporting agency accurately transcribes, stores, and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate this section simply by reporting an item of information that turns out to be inaccurate." 16 C.F.R. Part 600, App. (effective May 4, 1990). In 2011, following passage of the Consumer Financial Protection Act of 2010, which transferred most of the FTC's authority over the FCRA to the CFPB, the FTC's commentary was removed from the Code of Federal Regulations. *See* 76 FR 44462-01 (July 26, 2011). Nonetheless, courts have consistently applied this rule both before (*Miller*, 1986 U.S. Dist. LEXIS 16047, at *6-9) and after (*Darrin*, 2014 U.S. Dist. LEXIS 66461, at *17-18; *Ogbon*, 2013 U.S. Dist. LEXIS 50816, at *20-24), 16 C.F.R. Part 600, App. was in effect.

In the leading case, *Henson*, the Seventh Circuit applied the reasonable-reliance rule in the context of a CRA's reliance on information reflected in a court's "judgment docket" (*i.e.*, a summary of the underlying substantive court records). The court reasoned that a contrary rule requiring CRAs "to engage in background research . . . would substantially increase the cost of their services, [forcing CRAs] to pass on the increased costs to their customers and ultimately to the individual consumer." 29 F.3d at 285. The court deemed such a requirement "unduly burdensome and inefficient," reasoning that the consumer is in a better position than the CRA to detect errors, and that a consumer, upon finding erroneous information in his or her credit report, can then seek correction of the error. *Id.* at 286.[7]

Other cases have applied *Henson*'s logic to a CRA's reliance on other source CRAs that, like BGC here, are presumptively credible. *See Wright v. Experian Info. Solutions, Inc.*, 805 F.3d 1232, 1240 (10th Cir. 2015); *Frydman v. Experian Info. Solutions, Inc.*, 2016 U.S. Dist. LEXIS 107139, at *38-44 (S.D.N.Y. Aug. 11, 2016); *Wenning v. On-Site Manager, Inc.*, 2016 U.S. Dist. LEXIS 81126, at *57-61 (S.D.N.Y. June 22, 2016); *Rodriguez v. Equifax Info. Servs., LLC*, 2015 U.S. Dist. LEXIS 93560 (E.D. Va. July 17, 2015); *Gray v. Experian Info. Solutions, Inc.*, 2001 U.S. Dist. LEXIS 5466, at *24-25 (D. Ariz. Mar. 21, 2001). These and many other

---

[7] The two-tiered structure of the FCRA's investigation procedures, which the court in *Henson* discusses, buttresses the court's reasoning there and RentGrow's argument here. Section 1681e(b) – the provision at issue here – requires CRAs to use reasonable procedures in obtaining and initially reporting consumer information. As *Henson* and like cases make clear, relying on other reputable sources (absent knowledge of a factual basis to believe the source's report is not accurate) is reasonable as a matter of law. 29 F.3d at 285-86. In contrast, Section 1681i – which is not at issue here – sets forth the duties of a CRA in investigating and correcting information that the consumer has identified as inaccurate. Generally, a "reseller" CRA is not required to investigate alleged inaccuracies (unless the reseller determines that the inaccuracy was its own fault). Rather, the responsibility to investigate typically falls upon the CRA that was the source of such information. *See* 15 U.S.C. § 1681i(f)(1)-(2). The FCRA's use of this process supports the conclusions reached in *Henson* and like cases that investigation by a CRA, prior to notice of inaccuracy, is not required. *See* 29 F.3d at 286. And it certainly is not required of a reseller in light of its limited re-investigation obligations under Section 1681i(f). Here, RentGrow fully complied with its Section 1681i obligations – Plaintiff does not attempt to allege otherwise – and the result was that Plaintiff's tenant screening report was updated and he obtained the apartment, all within a few days. This is exactly how the statute was designed to work.

decisions acknowledge that requiring CRAs to investigate each negative item of information obtained from a furnishing source would impose prohibitive expense on CRAs and consumers, and would completely upend the credit reporting industry – results the FCRA clearly does not contemplate.  *See Sarver,* 390 F.3d at 972 (holding that where "credit report is generated at the time an inquiry for it is received . . . . a mistake does not render the procedures unreasonable" because, *inter alia*, "[t]he increased cost to [the CRA] to examine each of these entries individually would be enormous").

Here, Plaintiff has not advanced any factual allegations or legal theory to support an argument that it was unreasonable for RentGrow to rely on the information reported by BGC. *See Sarver*, 390 F.3d at 972 (holding that reliance on a reputable source is permitted unless CRA has "notice of prevalent unreliable information" from the source); *Darrin v. Bank of Am.*, *N.A.*, 2014 U.S. Dist. LEXIS 66461, at *17-18 (E.D. Cal. May 13, 2014) (refusing to reconsider dismissal where plaintiff's allegations failed to "demonstrat[e] that the CRA Defendants would have reason to believe that [furnisher of allegedly inaccurate background information] was not a reputable source").  RentGrow's reliance on information from BGC falls squarely within the numerous authorities discussed above.  The FAC does not (and could not) allege that it was unreasonable for RentGrow to rely on BGC, where RentGrow's reliance is supported by the authoritative case law, a plain reading of the FCRA, and common sense.  For this reason, in addition to the lack of injury alleged, Plaintiff's 1681e(b) claim should be dismissed.

> **3.** **Plaintiff's Claim Fails as a Matter of Law Because Plaintiff Does Not (and Cannot) Plausibly Allege that RentGrow's Report Caused Him Injury.**

Plaintiff's claim should be dismissed for an additional, independent reason: Plaintiff fails to allege facts indicating that the allegedly inaccurate consumer report caused him injury.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, to survive a motion to dismiss, a complaint must offer "well-pled (*i.e.*, non-conclusory, non-speculative) facts" sufficient to plausibly narrate a claim for relief. *Schatz*, 669 F.3d at 55. As noted above, to succeed on a Section 1681e(b) claim, a consumer must allege, *inter alia*, not only that "inaccurate information was included in a consumer's credit report," but that "the consumer suffered [an] injury . . . caused by the inclusion of the inaccurate [information]." *Richardson*, 190 F. Supp. 2d at 85 (internal quotes and citation omitted).

Here, Plaintiff's single, conclusory allegation of "harm to reputation and emotional distress, including anxiety, frustration, embarrassment and humiliation" (FAC ¶ 21) has no alleged factual basis in the FAC. Plaintiff conspicuously does *not* allege that he lost the opportunity to live at Canterbury, or even that his opportunity to live at Canterbury was delayed. In fact, Plaintiff's dispute was resolved in his favor only five days later, and he successfully obtained an apartment at the Canterbury. Nor does Plaintiff allege any communications or information indicating that his reputation has somehow been harmed.

These pleading omissions are dispositive. *See Sion v. SunRun, Inc.,* 2017 U.S. Dist. LEXIS 35730, at *8-9 (N.D. Cal. Mar. 13, 2017) (dismissing FCRA claim because plaintiff's allegations of mental and emotional distress were "too speculative and vague to plausibly show actual damages"); *cf. Miller v. Caliber Home Loans, Inc.*, 2018 U.S. Dist. LEXIS 25504, at *10 (W.D. Ky. Feb. 15, 2018) ("Even when viewed in a light most favorable to [plaintiff], her complaint does not raise a reasonable inference that she suffered emotional distress as a result of the seven-day gap between [defendant's] filing of foreclosure and providing notice to Miller that her loss-mitigation application had been denied."); *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 391 (E.D.N.Y. 2011) ("As for damages, the plaintiffs have alleged no facts—aside

from their conclusion that they suffered emotional distress—that show that the alleged acts of the defendant caused any quantifiable damage."); *Santiago v. Santiago*, 731 F. Supp. 2d 202, 209 (D.P.R. 2010) ("Plaintiff alleges only that . . . he suffered emotional damages as a result of the defendant's actions. Plaintiff's factual allegations are conclusory statements that turn the defamation claim into an 'unadorned, the-defendant-unlawfully-harmed-me accusation.'") (quoting *Haley v. City of Boston*, 677 F. Supp. 2d 379, 385 (D. Mass. 2009)).

In short, the FAC alleges no plausible injury resulting from the inclusion of any inaccurate information in Plaintiff's initial tenant screening report, as required to state a Section 1681e(b) claim. Accordingly, this claim fails as a matter of law and should be dismissed.

### B. Alternatively, Plaintiff's Claims for Statutory and Punitive Damages Fail as a Matter of Law and Should Be Stricken from the FAC.

#### 1. Legal and Pleading Standards for Motion to Strike

RentGrow respectfully submits that this action should be dismissed in its entirety. If the Court declines to do so, RentGrow alternatively requests that the Court strike from the FAC any claims for statutory and punitive damages under 15 U.S.C. § 1681n.

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A demand for damages that are not recoverable as a matter of law may be stricken pursuant to Rule 12(f). *Rivera v. DealerFunding, LLC,* 178 F. Supp. 3d 272, 281 (E.D. Pa. 2016) (citing *Seippel v. Jenkens & Gilchrist, P.C.,* 341 F. Supp. 2d 363, 383 (S.D.N.Y. 2004)). As explained in detail below, Plaintiff's claims for relief with respect to statutory and punitive damages fail as a matter of law and should be stricken from the FAC.

### 2. Because the FAC Fails as a Matter of Law to Allege "Willful" Violations, Plaintiff's Claims for Statutory and Punitive Damages Should Be Stricken.

Plaintiff's claims for statutory and punitive damages should be stricken because Plaintiff does not allege any facts that might support a finding that RentGrow's alleged FCRA violation was "willful." Under the FCRA, statutory and/or punitive damages are available only if the defendant "willfully fails to comply" with the statute. 15 USCS § 1681n(a).

"[I]n the context of the . . . FCRA, the Supreme Court has held that [a defendant's] violation is willful if the [defendant] either knew or showed reckless disregard as to whether its conduct was prohibited by the statute." *Fryer v. A.S.A.P. Fire & Safety Corp.*, 658 F.3d 85, 91 (1st Cir. 2011) (citing *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 57-58 (2007)). In *Safeco*, the Supreme Court held that a defendant's alleged violation of the FCRA is not reckless simply because its understanding of a statutory obligation is "erroneous"; instead, plaintiffs must allege that the defendant's reading of the FCRA is "objectively unreasonable." 551 U.S. at 69.

Because the Supreme Court in *Safeco* "treated willfulness as a question of law," *Van Straaten v. Shell Oil Prods. Co.*, 678 F.3d 486, 490-91 (7th Cir. 2012), courts frequently determine whether a particular interpretation was "objectively unreasonable," and therefore willful, on the pleadings. *See, e.g., Hutchinson v. Carco Grp., Inc.*, 2015 U.S. Dist. LEXIS 130858, at *18 (E.D. Pa. Sept. 29, 2015); *Goldberg v. Uber Techs., Inc.*, 2015 U.S. Dist. LEXIS 44675, *5-7, *10 (D. Mass. Apr. 6, 2015); *Vidoni v. Acadia Corp.*, 2012 U.S. Dist. LEXIS 59967, *13-17 (D. Me. Apr. 27, 2012).

Here, Plaintiff fails to allege any facts whatsoever indicating that RentGrow's alleged FCRA noncompliance was "willful." Absent such factual allegations, Plaintiff's claims for statutory and punitive damages under Section 1681n fail a matter of law. RentGrow's reliance

12

on the criminal record information reported by BGC was objectively reasonable. There is a large body of case law permitting such reliance without independent verification, and no controlling authority to the contrary. As *Hutchinson* recognized, this alone negates any possibility of willfulness. *See* 2015 U.S. Dist. LEXIS 130858, at *19-20 (dismissing willfulness allegations at the pleading stage because, *inter alia*, "[w]hat is 'reasonable' [under Section 1681e(b)] . . . is clearly subject to interpretation" and the plaintiff "ha[d] not identified any 'clearly established law' (either from the judiciary or a federal agency) that establishes that it is unreasonable for a CRA to rely on the accuracy" of a reputable source).

Accordingly, because Plaintiff does not, and as a matter of law cannot, allege any facts suggesting that RentGrow's alleged violation of the FCRA was "willful," his claims for statutory and punitive damages fail. If the Court does not dismiss this action *in toto*, it should alternatively strike from the FAC Plaintiff's requests for such damages.

**IV.  CONCLUSION**

For the foregoing reasons, this action should be dismissed in its entirety pursuant to Rule 12(b)(6). Alternatively, pursuant to Rule 12(b)(6) and 12(f), the Court should strike from the FAC all claims for statutory and/or punitive damages under 15 U.S.C. § 1681n.

                                                Respectfully submitted,

                                                RENTGROW, INC.

                                                By its attorneys,

Dated:  March 16, 2018                    */s/ Matthew J. Frankel*
                                                Matthew J. Frankel, (BBO# 664228)
                                                Elizabeth Nagle (BBO #696775)
                                                Nixon Peabody LLP
                                                100 Summer Street
                                                Boston, MA 02110
                                                Telephone:  (617) 345-1000
                                                Facsimile:  (617) 345-1300
                                                mfrankel@nixonpeabody.com
                                                enagle@nixonpeabody.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 16, 2018.

*/s/ Matthew J. Frankel*

4839-3017-4047.1